IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 11-cv-00139-WYD-KLM

JOHN FRANK LOVATO,

    Plaintiff

v.

JASON PITTS, a police officer with the Longmont Police Department, in his individual capacity;
ROBERT BLACK a police officer with the Longmont Police Department, in his individual capacity;
GREG RUPRECHT a police officer with the Longmont Police Department, in his individual capacity;
CRAIG MORTENSEN a police officer with the Longmont Police Department, in his individual capacity; and
CHRIS BORCHOWIEC a police officer with the Longmont Police Department, in his individual capacity,

    Defendants.

---

**ORDER**

---

I.    <u>INTRODUCTION AND BACKGROUND</u>

This matter is before the Court on the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 11), filed June 17, 2011. No response was filed. The motion is granted as set forth below.

This case involves the events surrounding a January 21, 2009 incident outside Plaintiff's home involving Plaintiff, members of Plaintiff's family, and several Longmont Police Officers. In his Complaint, Plaintiff alleges that on January 21, 2009, he was in his home at 72 Empire Place in Longmont, Colorado with his wife, sister-in-law,

grandson, and friends.

That afternoon, the Defendant officers were looking for a fugitive, and based on a tip from an informant, Longmont Police Officer Ruprecht believed the fugitive was residing at 72 Empire Place. Another Defendant, Officer Black, was assigned to assist with surveillance in relation to this tip. At approximately 2:05 p.m. on January 21, 2009, Officer Black undertook to observe the house at 72 Empire Place and the surrounding area. He parked his car on a nearby neighborhood street. Video surveillance began at approximately 2:30 p.m. that day. Officer Black described the house under surveillance as in the "[one] o'clock position of the cul-de-sac if looking eastbound from Martin Road" and as a "two-story dwelling, light tan or cream with beige or dark trim with an unattached garage to the southwest," and as a "two story faded yellow residence with medium to dark tan trim and an unattached garage with the same colors." (Compl. ¶ 2.) Officer Black actually described 61 Empire Place, not 72 Empire Place, which is a two-story, light green with dark green trim house with a matching unattached garage in the twelve o'clock position in the cul de sac.

At 4:06 pm, Officer Black identified someone wearing a black shirt and jeans walking from the driveway of 72 Empire Place to the alcove and then out of view as he walked between the unattached garage and house located at 49 Empire Place. At 4:08 p.m., Officer Black radioed Officer Pitts to report that he saw the fugitive leave 49 Empire Place to walk east and out of sight toward a garage.

Officer Pitts ordered other officers to surround 72 Empire Place with their weapons drawn. Officer Pitts also ordered Officer Mortensen to announce by bullhorn

that the fugitive was to exit 72 Empire Place.  Officer Mortensen next ordered everyone in 72 Empire Place outside.  Plaintiff, his family, and friends exited the house.  Each person exiting 72 Empire Place was asked about the fugitive.  Each person reported not knowing the fugitive and that the fugitive was not in the house.

Plaintiff asked to speak to the officer in charge, and Officer Pitts proceeded to question Plaintiff.  Plaintiff stated he and his family were not involved in any criminal activity and were unaware of the situation concerning the fugitive.  Officers asked Plaintiff questions about the fugitive.  Officers also accused Plaintiff of lying about the fugitive not being in 72 Empire Place.  Officers told Plaintiff that if he did not cooperate, admit that the fugitive was in 72 Empire Place, and go into the house to get the wanted person, they would arrest Plaintiff.  This questioning continued for approximately thirty minutes.  Plaintiff gave the officers verbal consent to search his home.  No search occurred.

After approximately one-half hour, the fugitive's mother reported to officers that the fugitive was in 61 Empire Place, next door to 72 Empire Place.  The house at 61 Empire Place was surrounded and the fugitive was ordered to exit.  He was apprehended.

In his Complaint, Plaintiff asserts two claims for relief pursuant to 42 U.S.C. § 1983 against the various Defendants.  Specifically, Plaintiff claims that Defendants Pitts, Black, Ruprecht, Mortensen, and Borchowiec violated his Constitutional rights under the Fourth, Fifth, and Fourteenth Amendments by subjecting him to an illegal detention, arrest, search and seizure.  Plaintiff also alleges that these same Defendants

violated his right to privacy under the Fourth, Fifth, and Fourteenth Amendments.

In the motion to dismiss, Defendants seek dismissal of all claims asserted against them for failure to state a claim upon which relief may be granted. Defendants also assert that they are entitled to qualified immunity on each of Plaintiff's claims.

II.   ANALYSIS

   A.   Standard of Review

The pending motion seeks dismissal of Plaintiff's claims for either a lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

Where a party moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the attack can be either a facial attack to the allegations of the complaint or a factual attack. *Paper, Allied Indus., Chemical and Energy Workers Intl. Union v. Continental Carbon* Co., 428 F.3d 1285, 1292 (10th Cir. 2005). Where there is a facial attack on the sufficiency of the Complaint, the Court must look to its factual allegations and accept them as true. *See id*; *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971).

Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court's inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). Furthermore, conclusory allegations are "not entitled to the assumption of truth." *Id.* at 1950.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. Additionally, the Tenth Circuit has instructed that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

"[A] district court may not grant a motion to dismiss for failure to state a claim

'merely because [a party] failed to file a response . . . .' This is consistent with the purpose of Rule 12(b)(6) motions as the purpose of such motions is to test 'the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.'" *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (quoting *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)). Consequently, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted. *Id.* at 1177-78.

Here, the Defendants have invoked the defense of qualified immunity. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When a Defendant raises qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process. The threshold inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask

whether the right was clearly established." *Id.*[1]

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In other words, there must be case authority in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard County*, 494 F.3d 891, 903 (10th Cir. 2007).

    B.    <u>Whether Plaintiff's First Claim for Relief—Illegal Search and Seizure Pursuant to 42 U.S.C. § 1983—Should be Dismissed Against Defendants Pitts, Black, Ruprecht, Mortensen, and Borchowiec</u>

Plaintiff's First Claim for relief alleges an unreasonable and illegal search and seizure pursuant to 42 U.S.C. § 1983 against all of the Defendants. (Compl. ¶¶ 49-55.) Specifically, Plaintiff asserts that Defendants Pitts, Black, Ruprecht, Mortensen, and Borchowiec "unreasonably and illegally conducted a detention, arrest, search and

---

[1] In a recent decision, the Supreme Court held that courts are no longer required to follow the *Saucier* format in evaluating a qualified immunity claim. *Pearson v. Callahan*, 555 U.S. 223 (2009).

seizure, interrogation, and made threats against Plaintiff during their contact with him on January 21, 2009, in violation of the Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures of his person, place and things." (Compl. ¶ 50.) Plaintiff goes on to allege that the Defendants' conduct was "unsupported by a warrant or probable cause or exigent circumstances in violation of clearly established law that a reasonable officer in that position would have known that the facts did not support the seizure of Plaintiff under the Fourth Amendment." (Compl. ¶ 50.)

In the motion to dismiss, Defendants argue that no illegal search, seizure or arrest took place on January 21, 2009. "At most, Plaintiff was detained for a brief period while Officers investigated a potential criminal circumstance on a reasonable and appropriate basis." (Mot. at 4.)

The Fourth Amendment protects individuals from "unreasonable searches and seizures. To state a claim under the Fourth Amendment, a plaintiff must establish that a seizure occurred and that the seizure was unreasonable." *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000) (internal quotation marks omitted). "Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).

An investigative stop or detention is "a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007). The constitutionality of an

investigative detention depends on "whether the officer's action was justified at its inception, and whether [the detention] was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 7, 19-21 (1968). Under *Terry*, an officer may conduct an investigative detention of an individual if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Id.* When determining whether an officer had reasonable suspicion, the court must "look at the totality of the circumstances to determine whether a particularized and objective basis, viewed from the standpoint of an objectively reasonable police officer, existed for suspecting legal wrongdoing." *United States v. Lopez*, 518 F.3d 790, 797 (10th Cir. 2008).

Turning to Plaintiff's Complaint, I note that even though Plaintiff failed to respond to the motion to dismiss, I must still examine Plaintiff's allegations to determine whether Plaintiff has plausibly alleged that the Defendants subjected him to an illegal search and seizure. *See Issa*, 354 F.3d at 1177. After a careful review of the Complaint, I find that the nothing indicates an illegal search and seizure on the part of the Defendants. To the contrary, Plaintiff's allegations establish that the information, relied upon by the officers, created a reasonable suspicion that illegal activity was occurring. Thus, the brief detention of the Plaintiff, while the officers investigated the whereabouts of a fugitive, was justified for the legitimate governmental purpose of protecting the public from a wanted fugitive.

Specifically, the Complaint alleges that Officer Ruprecht's informant placed the fugitive at 72 Empire Place. Officer Black's surveillance confirmed that a person

matching the description of the fugitive was seen "walking from the driveway area of 72 Empire Place towards the alcove and then out of view as he went between the unattached garage and home located at 49 Empire Place." (Compl. ¶ 25.) Officer Mortenson then made several announcements ordering the fugitive out of the home at 72 Empire Place. When no one exited, Officer Mortensen ordered all occupants of 72 Empire Place out of the home. Based on these allegations, I find that it was reasonable for the officers to question Plaintiff about the whereabouts of the fugitive. Moreover, I find that the totality of the circumstances as alleged in the Complaint created a reasonable suspicion supported by articulable facts that the fugitive was inside 72 Empire Place. Thus, because Plaintiff failed to establish that the investigative detention was unreasonable, no constitutional violation occurred. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's First Claim for Relief. Plaintiff's First Claim for Relief is dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

  C. <u>Whether Plaintiff's Second Claim for Relief—Invasion of the Right to Privacy Pursuant to 42 U.S.C. § 1983—Should be Dismissed Against Defendants Pitts, Black, Ruprecht, Mortensen, and Borchowiec</u>

Defendants argue that Plaintiff's Second Claim for Relief should be dismissed for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). Defendants assert that the Complaint fails to state a federal civil rights violation "grounded in an alleged unreasonable intrusion upon the seclusion of another." (Mot. at 10-11.)

In the Complaint, Plaintiff alleges that the Defendants "unnecessarily invaded [his] privacy by surrounding his home with a show of law enforcement force and weapons and then violated his right to privacy by illegally ordering him outside the

sanctity of his private home without a warrant and without exigent circumstances . . . ." (Compl. ¶ 57.)

"The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York*, 445 U.S. 573, 589 (1980); see *Mascorro v. Billings*, 10-7005 (10th Cir. Aug. 31, 2011). Consequently, "the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection." *United States v. Martinez–Fuerte*, 428 U.S. 543, 561 (1976). Indeed, protecting the home against highly intrusive "general searches" was the driving force behind the adoption of the Fourth Amendment. *Payton*, 445 U.S. at 583. Thus, Government entry into a private home is permitted only under limited circumstances. *Id.*

Here, Plaintiff makes no allegations that the officers entered his home. In fact, Plaintiff exited his home upon the officers' requests. The questioning took place at an unknown location outside of Plaintiff's home. Thus, I find no constitutional violation occurred, and Defendants are entitled to qualified immunity on this claim. Plaintiff's invasion of privacy claim asserted under federal law is dismissed under Fed. R. Civ. P. 12(b)(6).

To the extent that Plaintiff alleges an invasion of privacy claim under state law, I find that such claim also fails.[2] The Colorado Governmental Immunity Act ("CGIA")

---

[2] Though not specifically alleged in the Complaint, I address a state law claim out of an abundance of caution.

governs circumstances under which a person may maintain a tort action against the State of Colorado, its political subdivisions, instrumentalities, and employees. *See Mesa County Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1203 (Colo. 2000). The CGIA provides that a public entity is immune from all claims that lie or could lie in tort, unless the claim falls within one of the eight limited areas for which immunity has been waived. *See* Colo. Rev. Stat. § 24-10-105-106.

The CGIA also provides similar immunity to public employees with two exceptions. First, public employees are not immune from tort claims if their acts or omissions causing the injury were willful and wanton. *See* Colo. Rev. Stat. § 24-10-118. Second, public employees are not immune from claims falling within the eight explicitly waived areas. *See* Colo. Rev. Stat. § 24-10-105. The CGIA defines "public employee" to include officers and employees of public entities. Thus, I find that the Defendants are public employees within the meaning of the CGIA. *See* Colo. Rev. Stat. § 24-10-103(4)(a).

Although the CGIA does not define the term "willful and wanton", the Colorado Supreme Court looked to the definition of "willful and wanton" for purposes of exemplary damages ("conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff") and the definition of "willful and wanton" used in the automobile guest statute (as "wholly disregardful of the rights, feeling and safety of others . . . at times even imply[ing] an element of evil"). *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1991).

Colo. Rev. Stat. § 24-10-110(5)(a) provides that in actions "in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint." "Failure to plead the factual basis of an allegation that an act or omission of a public employee was willful and wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted." § 24-10-110(5)(b). "Whether a plaintiff has pleaded sufficient facts to state a claim based upon willful and wanton conduct is to be determined by the court." *Barham v. Scalia*, 928 P.2d 1381, 1385 (Colo. App. 1996). "However, when there are disputed issues of fact, a well pleaded claim that an employee acted willfully and wantonly must await determination at trial on the merits." *Id.*

Turning to the Complaint, I must first determine whether Plaintiff sufficiently alleged that the Defendants engaged in willful and wanton conduct. I find that the Complaint lacks such allegations. As I previously found in this Order, the officers acted appropriately based on their reasonable suspicion that the fugitive was inside 72 Empire Place. I find that Plaintiff's allegations, taken as true, do not show that the officers' conduct was wilful and wanton.

Second, I must determine whether Plaintiff's invasion of privacy claim falls within any of the following eight areas for which immunity has been waived. Colo. Rev. Stat. § 24-10-106 states that sovereign immunity is waived by a public entity in an action for injuries resulting from: (1) the operation of a motor vehicle; (2) the operation of any public hospital or correctional facility; (3) a dangerous condition of a public building; (4)

a dangerous condition of a public highway; (5) a dangerous condition of a public park or recreational area; (6) the operation of a public water or sanitation facility; (7) the operation and maintenance of certain qualified state capital assets; and (8) the failure to perform a required educational employment background check.  Colo. Rev. Stat. § 24-10-106(a)-(h).  After reviewing the allegations in the Complaint, I find that Plaintiff's claim fails to fall within these eight areas for which immunity has been waived.  Accordingly, to the extent that Plaintiff asserts a claim for invasion of privacy under state law, it is dismissed.

III.    CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 11) is **GRANTED.**   Plaintiff's Complaint is **DISMISSED** in its entirety.

It is FURTHER ORDERED that Defendants are awarded their costs to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54.1(d)(1) and D.C.COLO.LCivR 54.1.

Dated:  September 14, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge